# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3758

_____

| | |
|---|---|
| In Re:  Milk Products Antitrust Litigation. | * * * |
| ---------------------------------------------- | * |
| Rainy Lake One Stop, Inc., et al., on behalf of themselves and all others similarly situated, | * * * |
| | *   Appeal from the United States |
| | *   District Court for the |
| Plaintiffs - Appellants, | *   District of Minnesota. |
| | * |
| v. | * |
| | * |
| Marigold Foods, Inc., et al., | * * |
| | * |
| Defendants - Appellees. | * |

_____

Submitted:  June 14, 1999

Filed:   November 15, 1999

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and BYRNE,[*] District Judge.

_____

LOKEN, Circuit Judge.

_____

[*]The HONORABLE  WM. MATTHEW BYRNE, JR., United States District Judge for the Central District of California, sitting by designation.

This is an antitrust action commenced as a class action by purchasers of milk and milk products at wholesale. The defendants are milk processors accused of conspiring to fix their wholesale prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. After more than two years of discovery and pretrial motions, the district court[1] dismissed the individual claims of the named plaintiffs and denied their motion for class certification. Four named plaintiffs appeal, raising numerous issues. Concluding the district court did not err in dismissing the individual claims of the named plaintiffs, and did not abuse its discretion in denying plaintiffs' motion for class certification and their untimely motion to add more named plaintiffs, we affirm.

## I. Background.

On June 24, 1996, seven named plaintiffs filed their first amended class action complaint in which they proposed to represent a class of wholesale purchasers of milk and milk products in a five-State area. To avoid the four-year statute of limitations, see 15 U.S.C. § 15b, plaintiffs alleged that defendants had fraudulently concealed their price fixing conspiracy. On August 23, 1996, the district court entered a pretrial scheduling order, setting a deadline of February 1, 1997, for "[a]ll motions which seek to amend the pleadings or add parties." On December 26, the court dismissed the First Amended Complaint without prejudice on the grounds that the price-fixing allegations were too vague and the fraudulent concealment allegations were factually insufficient. The order permitted plaintiffs to file an amended complaint no later than January 31, 1997. The court's fraudulent concealment ruling was significant to class certification because some of the named plaintiffs had only purchased milk outside the four-year limitations period.

---

[1]The HONORABLE PAUL A. MAGNUSON, Chief Judge of the United States District Court for the District of Minnesota.

Plaintiffs filed their Second Amended Complaint on January 31, 1997. The eight named plaintiffs included six of the seven named in the First Amended Complaint, including two whose only milk purchases were outside the limitations period. Defendants promptly moved to dismiss the Second Amended Complaint. In a twenty-eight-page pretrial order, the district court denied those motions, except as to one defendant, K&P Company. However, the court dismissed plaintiffs' fraudulent concealment allegations, rejecting their contention that due diligence in discovering the conspiracy need not be alleged, and concluding that plaintiffs had not sufficiently alleged either their own due diligence or affirmative acts of concealment by defendants. See generally Klehr v. A.O. Smith Corp., 117 S. Ct. 1984, 1993 (1997).

Plaintiffs moved for certification of the proposed class on February 1, 1998. In this motion, they reduced the proposed class to all purchasers of fluid milk products in the area covered by the Upper Midwest Milk Marketing Order (FMO 68).[2] After defendants filed briefs opposing class certification, plaintiffs significantly modified their position in three respects. First, they again reduced the proposed class, this time to include all persons who purchased plain milk in half-gallon or larger containers in the Minnesota portion of FMO 68. Second, plaintiffs moved to withdraw seven of the eight named plaintiffs, conceding they were not appropriate class representatives.[3] Third, fourteen months after the district court's deadline for amending pleadings and

_____

[2]For a description of federal milk regulation through marketing orders under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601 *et seq.*, see Minnesota Milk Producers Association v. Glickman, 153 F.3d 632 (8th Cir. 1998), cert. denied, 119 S. Ct. 1803 (1999).

[3]Plaintiffs Robinson Enterprises and Gerald Buckstein did not wish to pursue the litigation; Magic City Cakes was outside the reduced geographic area; The Littlestore never purchased directly from any defendant; Thomas DeCaigny and Stan Denne did not purchase within the four-year limitations period; and Hoffman Corner Oil Company purchased only from the dismissed defendant, K&P.

adding parties, plaintiffs moved for leave to file a Third Amended Complaint adding three new named plaintiffs.

On July 14, 1998, the district court entered a fifteen-page pretrial order disposing of these and other motions. As relevant here, the court first granted plaintiffs' motion to withdraw and dismissed seven named plaintiffs from the case. The court denied plaintiffs' motion for leave to file a Third Amended Complaint, concluding:

> The simple fact is that this case was originally filed in May 1996, and Plaintiffs have already twice been allowed to amend their complaint. After this extended amount of elapsed time, Plaintiffs' present realization that their lone named complainant may not qualify as a class representative does not establish good cause. Because Plaintiffs fail to satisfy the good cause required of [Federal Rule of Civil Procedure] 16, Plaintiffs' motion to file a third amended complaint is denied.

Turning to plaintiffs' motion for class certification, the court found that the sole remaining named plaintiff, Rainy Lake One Stop, Inc. ("Rainy Lake"), had sold its business, including this antitrust claim, and therefore "lacks the standing necessary to bring a suit for damages or for injunctive relief." In addition, the court concluded that Rainy Lake was not an adequate or typical class representative because, as a small convenience store in International Falls, Minnesota, its claim was not typical of large purchasers located elsewhere in the State, such as supermarket and restaurant chains and independent milk distributors. Consequently, the court denied plaintiffs' motion for class certification. One month later, acting on plaintiffs' motion for entry of final judgment, the court confirmed its ruling that Rainy Lake lacked standing to sue, dismissed Rainy Lake's individual antitrust claim, and entered final judgment dismissing plaintiffs' Second Amended Complaint.

On appeal, plaintiffs argue (i) the district court erred in concluding that Rainy Lake lacks standing; (ii) the court abused its discretion in denying class certification;

(iii) the court abused its discretion in denying leave to file a Third Amended Complaint; (iv) the court erred in dismissing the fraudulent concealment allegations; (v) the court erred in dismissing defendant K&P; (vi) the court erred in a successor liability ruling regarding defendant Land O' Lakes; and (vii) the court abused its discretion in limiting plaintiffs' discovery of grand jury documents. Our resolution of the first three issues ends the case, and we will not address the others.

## II. An Issue of Appellate Jurisdiction.

Four of the eight named plaintiffs filed this appeal, challenging the district court's denial of class certification and their motion to add other named plaintiffs. They argue as though the putative class has appealed. But there is no class, and no absent class member has intervened to participate in the appeal, the procedure upheld in United Airlines, Inc. v. McDonald, 432 U.S. 385, 393-95 (1977). "Federal appellate jurisdiction is limited by the appellant's personal stake in the appeal." Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 336 (1980). Accordingly, we must define the limits of appellants' personal stake in this appeal.

In Roper, named plaintiffs appealed the entry of *favorable* money judgments entered on their individual claims after class certification was denied. The Supreme Court held that plaintiffs' "*individual* interest in the litigation -- as distinguished from whatever may be their representative responsibilities to the putative class -- is sufficient to permit their appeal of the adverse certification ruling." 445 U.S. at 340 (emphasis in the original). By contrast, here the district court dismissed the individual claims of all eight named plaintiffs *on the merits* and then denied class certification. If appellants' individual claims were properly dismissed, they are not members of the putative class, and they have no future stake in the litigation. This question of appellate jurisdiction is important when we come to the issue of whether the district court erred in denying plaintiffs' motion for leave to file a Third Amended Complaint adding new class representatives. If appellants are not members of the class, they have no personal

stake in this issue, and we have no jurisdiction to consider it. Therefore, we begin our analysis of the district court's rulings by examining whether appellants' individual claims were properly dismissed.

With their motion for class certification pending, plaintiffs filed a motion to "withdraw" seven of the eight named plaintiffs, including three appellants. The district court granted that motion, explaining:

> The parties do not dispute the fact that seven of the named Plaintiffs in the Second Amended Complaint should be dismissed, either because they are not members of the proposed class or because they do not wish to actively pursue the litigation. However, Defendants are correct in their assertion that the dismissal of these parties must be done by order of this Court. Accordingly, pursuant to Rule 41(a)(2), this Court grants summary judgment in favor of Defendants, and the following named Plaintiffs are dismissed from this action . . . .

On appeal, plaintiffs do not challenge this portion of the court's order. Accordingly, we summarily affirm the dismissal of appellants Thomas DeCaigny, Stan Denne, and Hoffman Corner Oil Company.

The district court dismissed the individual claim of the fourth appellant, Rainy Lake, for lack of standing. In Part III of this opinion, we affirm that dismissal. In our view, that issue effectively disposes of the appeal, because the lack of a class representative precludes certification of the class proposed by appellants, and because appellants have no remaining personal stake in whether new named plaintiffs should represent an amended class to which they would not belong. However, this question of appellate jurisdiction was not addressed by the parties. Therefore, we will also consider the district court's discretionary orders denying class certification and the motion to add more named plaintiffs.

### III. The Dismissal of Rainy Lake's Individual Claim.

Rainy Lake first appeared as a named plaintiff in the Second Amended Complaint filed on January 31, 1997. Months earlier, Rainy Lake had entered into a Standard Purchase Agreement in which it agreed to sell its convenience store premises and substantially all the business assets to unrelated purchasers. The Purchase Agreement listed only tangible assets, but an addendum transferred the business name, "Rainy Lake One Stop," and the store's operating licenses to the buyers, who also assumed on-going testing and well-monitoring obligations imposed on Rainy Lake by the Minnesota Pollution Control Agency. The sale closed on July 1, 1996. The contract documents made no mention of the unasserted antitrust claim in this action. Plaintiffs submitted to the district court an affidavit by a Rainy Lake shareholder, Nancy Rognerud, averring that "[t]he assets sold did not include Rainy Lake One Stop, Inc.'s law suit." The record does not include testimony by the buyers on this issue.

The district court concluded that Rainy Lake "did not retain an interest in this action" when it sold the convenience store assets:

> Nancy Rognerud's affidavit . . . states that the sale of assets did not include Rainy Lake's interest in the present lawsuit. This affidavit is directly contradicted by Rognerud's previous deposition testimony, in which she stated that since July 1, 1996, her corporation did not retain any ownership interest in the store. The only [asset] which Rognerud testified that her corporation retained was a vehicle.

Therefore, the court concluded, Rainy Lake "lacks the standing necessary to bring a suit for damages or for injunctive relief." Plaintiffs challenge that ruling on appeal.

The issue is whether Rainy Lake sold its unasserted and presumably unknown antitrust claim along with its other business assets, a question not addressed in the

-7-

contract documents. Under Minnesota law, whether a contract is ambiguous is a question for the court. Ambiguities are resolved by ascertaining the intent of the parties from the contract documents and relevant extrinsic evidence. See Republic Nat'l Life Ins. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979). Given the evidence of record and the way this issue is presented on appeal, the district court's finding that the parties to the sale of substantially all of Rainy Lake's business assets intended to include an unknown claim arising out of store operations must be affirmed.[4]

Plaintiffs argue that federal common law governs this issue and creates a presumption against the sale of antitrust claims. Plaintiffs cite cases from other circuits such as Sullivan v. National Football League, 34 F.3d 1091, 1106 (1st Cir. 1994), cert. denied, 513 U.S. 1190 (1995), but those cases involved very different claim transfer issues. In general, we see little need for federal common law to govern this issue of contract law, and no justification for a presumption overriding the contracting parties' intent. Moreover, framing this as an issue of antitrust policy does not help plaintiffs' position. A named plaintiff in a large antitrust class action assumes obligations to the class and a duty to produce its books and records in class action discovery. For a small business such as Rainy Lake, these burdens may be significant, and there is no guarantee that a role as named plaintiff will increase its share of any recovery above what it would receive as an absent class member. If the on-going business has been sold prior to discovery of the antitrust claim, the decision whether to take on these burdens should rest with the buyers.

For the foregoing reasons, the district court's judgment dismissing Rainy Lake's individual claim for lack of standing is affirmed.

---

[4]The question of the contracting parties' intent is one of fact. Because plaintiffs did not object to the district court resolving this issue on an abbreviated record, the court's finding as to intent must be upheld unless clearly erroneous.

## IV. The Denial of Class Certification.

Because Rainy Lake's individual claim was properly dismissed for lack of standing, it was not a member of the class and could not represent the class. Because Rainy Lake was the only remaining named plaintiff, the class proposed in the Second Amended Complaint "could not have been properly certified." Bishop v. Committee on Prof'l Ethics, 686 F.2d 1278, 1289 (8th Cir. 1982). Thus, for this reason alone, the order denying class certification must be affirmed. The district court also declined to certify the class on the alternative ground that, even if Rainy Lake retained an interest in the antitrust claim after selling its business assets, it failed to satisfy the typicality and adequacy requirements for a class representative. See FED. R. CIV. P. 23(a)(3) and 23(a)(4). We affirm on this alternative ground as well.

A district court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982). The adequacy and typicality requirements "serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Prods., Inc. v. Windsor, 117 S. Ct. 2231, 2251 n.20 (1997) (quotation omitted). These issues are committed to the trial court's discretion. "A district court has broad discretion in determining whether to certify a class, and its determination will not be overturned absent a showing that it abused its discretion." Gilbert v. City of Little Rock, 722 F.2d 1390, 1399 (8th Cir. 1983), cert. denied, 466 U.S. 972 (1984).

The district court cited a number of factors in concluding that Rainy Lake was not an appropriate sole representative of the putative class. First, because Rainy Lake operated a small convenience store in northernmost Minnesota, "any evidence regarding an alleged conspiracy in Rainy Lake's geographic area would not necessarily translate into evidence of a conspiracy in other regions of Minnesota." Milk is a

perishable and rather bulky product.  Defendants introduced evidence there were at least three regional markets in Minnesota, and only two defendants and a substantial non-defendant dairy operate in northern Minnesota, where Rainy Lake is located. Rainy Lake's location on the perimeter of FMO 68 would be of no concern if there were other named plaintiffs located elsewhere in the class territory.  But the district court was legitimately concerned that Rainy Lake's isolated location made it an inappropriate sole representative for this large, State-wide class.

Second, similar concerns are raised by the fact that the Rainy Lake store made only small wholesale purchases at list price.  Plaintiffs' antitrust theory is that defendants conspired to fix their list prices of fluid milk.  Defendants introduced uncontroverted evidence that many sales to class members were made at cost-plus formula prices unrelated to defendants' list prices.  The class might of course be able to prove that defendants' formula prices were inflated by a conspiracy to fix seemingly unrelated list prices.  But the relevant question is whether Rainy Lake as sole class representative has a sufficient incentive to represent class members who must prove this additional unlawful effect.  Again, that is a legitimate reason to question Rainy Lake's adequacy and typicality.  See In re Industrial Diamonds Antitrust Litig., 167 F.R.D. 374, 381 (S.D.N.Y. 1996).

Third, the record casts doubt on Rainy Lake's desire to represent the entire class. Ms. Rognerud testified that she sought to represent only "small convenience stores," not "very large grocery stores" and convenience store chains.  A named plaintiff who lacks the desire  to "vigorously pursue" the interests of potential class members is not a fair and adequate representative of the class.  See Darms v McCulloch Oil Corp., 720 F.2d 490, 493 (8th Cir. 1983).

Finally, even if Rainy Lake retained some interest in the convenience store's antitrust claim, its sale of the business cuts against its adequacy and typicality as a sole class representative.  Plaintiffs' Second Amended Complaint sought injunctive relief.

Rainy Lake is out of business and therefore lacks standing to seek injunctive relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 110-11 (1983); Vasiliow Co., Inc. v. Anheuser-Busch, Inc., 117 F.R.D. 345, 347 (E.D.N.Y. 1987). In addition, Rainy Lake faces the prospect of litigating with the convenience store purchasers over ownership of the antitrust claim, a unique hurdle not faced by other class members. A proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation. See Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992); Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 179-80 (2d Cir. 1990), cert. denied, 498 U.S. 1025 (1991).

Given Rainy Lake's many typicality and adequacy deficiencies, we cannot say that the district court abused its discretion in refusing to certify the class because Rainy Lake was not a suitable sole representative of the entire class.

## V. The Motion to Amend.

Plaintiffs also appeal the district court's order denying as untimely the motion for leave to amend their complaint to add new named plaintiffs. As we explained in Part II of this opinion, we doubt this issue is properly before us. But it has been fully briefed and argued, and it could have been preserved for appeal had an absent class member intervened. So we consider it as an alternative basis to affirm.

We review an order denying leave to amend a complaint for abuse of discretion. See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998). Plaintiffs argue the district court abused its discretion by requiring them to satisfy the good cause requirement under Rule 16(b) instead of considering their motion under the liberal amendment standards of Rule 15(a). We disagree. When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order.

-11-

See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992). "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998).

Plaintiffs further argue they satisfied Rule 16(b)'s good cause requirement because they did not know of the need to add named plaintiffs until September 30, 1997, when the court dismissed K&P and the fraudulent concealment allegations in their Second Amended Complaint. However, the district court did not abuse its discretion in concluding this was an inadequate showing of good cause. The dismissal of the First Amended Complaint in late 1996 should have alerted plaintiffs to their named plaintiff inadequacies; indeed, they timely added two new named plaintiffs in the Second Amended Complaint filed just before the scheduling order deadline. The reasons why seven named plaintiffs were withdrawn demonstrate little care in the selection of adequate and typical class representatives. Finally, plaintiffs did not move to add new named plaintiffs until defendants responded to the motion for class certification. Granting that motion would have required reopening class discovery and further delay, precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a). See Bell, 160 F.3d at 454-55. In these circumstances, the district court did not abuse its discretion in denying the motion to amend as untimely.

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-