MOTORSPORTS RACING PLUS,
INC., Appellant,

v.

ARCTIC CAT SALES,
INC., Respondent,

Polaris Sales, Inc., Respondent,

Bombardier Motor Corporation of
America, a Delaware corporation,
Respondent,

Yamaha Motor Corporation, a
California corporation,
Respondent,

International Snowmobile Racing,
a Wisconsin corporation,
Respondent,

International Snowmobile Manufac-
turers Association, a Michigan
corporation, Respondent,

XYZ Corporation, ABC Partnership,
John Doe and Mary Roe, whose names
are unknown to Plaintiff.

No. C4–02–530.

Court of Appeals of Minnesota.

Nov. 19, 2002.

Wood R. Foster, Jr., Jordan M. Lewis,
Steven J. Weintraut, Vickie L. Loher, Sie-
gel, Brill, Greupner, Duffy & Foster, P.A.,
Minneapolis, MN, for appellant.

Annamarie A. Daley, Gary L. Wilson,
Christopher A. Seidl, Robins, Kaplan, Mil-
ler & Ciresi, L.L.P., Minneapolis, MN, for
respondent Arctic Cat Sales, Inc.

George W. Soule, Bowman & Brooke,
L.L.P., Minneapolis, MN, for respondent
Polaris Sales, Inc.

Robert A. Schwartzbauer, Paul J. Robbennolt, Dorsey & Whitney, L.L.P., Minneapolis, MN, for respondent Bombardier Motor Corporation of America.

James L. Volling, Jason K. Walbourn, Jessica R.F. Grassley, Faegre & Benson, L.L.P., Minneapolis, MN, for respondent Yamaha Motor Corporation.

Stephen C. Rathke, Kay N. Hunt, Stacy A. DeKalb, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, for respondent International Snowmobile Manufacturers Association.

Considered and decided by KALITOWSKI, Presiding Judge, KLAPHAKE, Judge, and HARTEN, Judge.

## OPINION

HARTEN, Judge.

Appellant brought both antitrust and business tort claims against respondents, who challenged appellant's standing to assert the claims. The district court found that appellant had standing and granted respondents summary judgment on the claims. Appellant challenges the summary judgment; respondents notice review of the determination that appellant had standing. Because we conclude that appellant did not have standing to bring its claims against respondents, we reverse the district court determination that appellant had standing, vacate as moot the summary judgment for respondents on other grounds, and remand to the district court with directions to order summary judgment for respondents on the issue of standing.

## FACTS

Appellant Motorsports Racing Plus, Inc. (MRP), a Minnesota corporation, was formerly in the business of organizing and promoting snowmobile races. In June 1998, after two MRP employees decided to leave and form a rival corporation, World Snowmobile Association (WSA), MRP's owner decided to sell its assets to WSA.

In the "Agreement To Acquire Snowmobile Racing Program," (the Agreement) these assets were defined as:

The Snowmobile Racing Program, and all right to promote, sanction and operate MRP race dates; information regarding racers, officials, sponsors and site officials, including all electronic database information; all permits, all sponsor rights and any intangibles and goodwill related to the Snowmobile Racing Program.

"Excluded Assets" were "[MRP]'s cash, the Receivables, and the specific assets listed on *Exhibit B* attached hereto." The list of assets provided that MRP's owner would keep only a Suburban, and the owner testified that, after the sale, MRP's property "might be some file cabinets or office furniture."

The Agreement also provided that

[t]here are no claims, actions, suits, proceedings, or investigations (whether or not purportedly on behalf of [MRP]) pending or threatened against or affecting [MRP] or the Assets * * *. There is no reasonable basis for any claim, action, suit, proceeding, or investigation against or affecting [MRP] or the Assets.

Almost two years after the sale, in June 2000, MRP brought this action involving antitrust and common law claims against respondents, snowmobile manufacturers Arctic Cat Sales, Inc., Polaris Sales, Inc., Bombardier, Inc., and Yamaha Motor Corporation, and the International Snowmobile Manufacturers Association, a Michigan corporation they formed.

Respondents moved for summary judgment, alleging as a threshold matter that

appellant lacked standing to bring the action. The district court found that appellant had standing, and respondents now seek review of that finding. Appellant challenges summary judgment for respondents on the antitrust and common law claims.

## ISSUE

Did MRP have standing to bring this action against respondents?

## ANALYSIS

■ Respondents contend that MRP lacked standing to sue them. Whether a party has standing to sue is a question of law, which this court reviews de novo. *Schiff v. Griffin*, 639 N.W.2d 56, 59 (Minn. App.2002).

■ Respondents argue that, because MRP sold its right to sue when it sold its assets, it lacked standing. In support, respondents rely on *In re Milk Products Antitrust Litigation*, 195 F.3d 430 (8th Cir.1999) (applying Minnesota law). *Milk Products* involved a named plaintiff in a class action that months before appearing as a plaintiff,

> had entered into a Standard Purchase Agreement in which it agreed to sell its convenience store premises and substantially all the business assets to unrelated purchasers. The Purchase Agreement listed only tangible assets, but an addendum transferred the business name * * * and the store's operating licenses to the buyers * * *. The contract documents made no mention of the unasserted antitrust claim in this action.

* * * *

> The issue is whether [the plaintiff] sold its unasserted and presumably unknown antitrust claim along with its other business assets, a question not addressed in the contract documents. * * * Given the evidence of record [which included contradictory testimony from the seller and no testimony by the buyers as to their intent at the time of the sale] and the way this issue is presented on appeal, the district court's finding that the parties to the sale of substantially all of [the plaintiff's] business assets intended to include an unknown claim arising out of store operations must be affirmed.

*Id.* at 435.[1] *Milk Products* concluded that, even though intangible assets were not mentioned in the sale documents, the sale had included a legal claim. Here, the Agreement did include "intangibles" and " 'General intangibles' * * * includ[es] things in action." Minn.Stat. § 336.9–102(a)(42) (2000). Thus, in selling its intangibles, MRP sold its claims.

■ *Milk Products* explicitly defines this issue as one of contract law.

> Plaintiffs argue that federal common law governs this issue and creates a presumption against the sale of antitrust claims. * * * [W]e see little need for federal common law to govern this issue of contract law, and no justification for a presumption overriding the contracting parties' intent.

*Milk Products*, 195 F.3d at 435–36. Minnesota contract law requires an interpretation that gives effect to the intent of

---

1. *But see Sullivan v. National Football League*, 34 F.3d 1091, 1106 (1st Cir.1994) (holding that absent express language that seller is selling causes of action, seller retains them). We decline to follow *Sullivan*, first because it is a first circuit case applying Massachusetts law and therefore without precedential value and second because *Sullivan* considered only the intent of the seller, not that of the buyer, and a contract must be interpreted to give effect to the intent of both parties. *See Ruddy v. State Farm Auto. Ins. Co.*, 596 N.W.2d 679, 684 (Minn.App.1999), *review denied* (Minn. 28 Sept. 1999).

the parties. *See Ruddy v. State Farm Mut. Auto. Ins.*, 596 N.W.2d 679, 684 (Minn.App.1999) (fundamental approach to construing contracts is to allow intent of parties to prevail), *review denied* (Minn. 28 Sept. 1999). MRP argues that it did not intend to sell its claims, but the record refutes that argument. In the Agreement, MRP represented that there were no claims pending that would affect its assets and no reasonable basis for any claims affecting its assets. MRP cannot argue both that it accurately represented to WSA that there were no claims and that MRP intended to retain its claims.

Absent any persuasive evidence either that MRP did not intend to sell its claims or that WSA did not intend to buy them, we conclude that the claims passed to WSA as intangible assets of MRP.

## DECISION

Because MRP's claims against respondents were sold as intangible assets to WSA, MRP lacked standing to bring this action. We reverse the district court's determination on standing, vacate as moot the summary judgment, and remand with directions to order summary judgment for respondents on the issue of standing.

**Vacated in part, reversed in part, and remanded.**